UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>LINN JACOB CROSS DOG III,<br><br>Defendant. | 3:16-CR-30079-RAL<br><br>OPINION AND ORDER DENYING MOTION FOR REDUCED SENTENCE |

Defendant Linn Jacob Cross Dog III ("Cross Dog") pleaded guilty to Counts II, V, and X of an eleven-count Superseding Indictment. Doc. 68 at 1. Count II and X charged Cross Dog with assaulting, opposing, resisting, and impeding a federal officer, while Count V charged carrying, using, brandishing and discharge of a firearm during and in relation to the crimes of violence. Doc. 28. This Court sentenced Cross Dog to 120 months on Count II and 96 months on Count X to run concurrently to each other, and 120 months on Count V to run consecutively to the sentences on Counts II and X, thereby imposing a 20-year aggregate sentence. Doc. 67, 68.

Cross Dog filed a motion for reduction in sentence under Part A of Amendment 821 to the Sentencing Guidelines, arguing that his sentence should be reduced to a term of 102 months on Count II and 82 months on Count X. Doc. 75 at 6. The Government filed a response, agreeing with Cross Dog that he is eligible for a sentence reduction, but opposing such a reduction. Doc. 77 at 4-5. For the reasons explained below, Cross Dog's motion is denied.

1

Sentences are final judgments, and under ordinary circumstances, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); see also United States v. Olson, No. 3:19-CR-30133-RAL, 2021 WL 4478031 at *1 (D.S.D. Sept. 30, 2021). However, § 3582(c)(2) provides an exception to this general rule. Upon a motion by a defendant, a "court may reduce the term of imprisonment" if the defendant was "sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission." § 3582(c)(2). Any sentence reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." Id.

In Dillon v. United States, 560 U.S. 817 (2010), the Supreme Court of the United States addressed the process for applying a retroactive guideline amendment, emphasizing that U.S.S.G. § 1B1.10 is binding. The Supreme Court required any "reduction [to] be consistent with applicable policy statements issued by the Sentencing Commission" and directed district courts to follow a two-step approach. Id. at 821. In the first step, the court must determine the inmate's eligibility for modification and then determine the amended guidelines range. Id. At step two, § 3582(c)(2) instructs courts to consider applicable 18 U.S.C. § 3553 factors to determine whether the authorized reduction is warranted in whole or in part under the specific circumstances of the case. Id. at 827. The Supreme Court also observed:

> Consistent with the limited nature of § 3582(c)(2) proceedings, § 1B1.10(b)(2) also confines the extent of the reduction authorized. Courts generally may "not reduce the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) . . . to a term that is less than the minimum of the amended guideline range" produced by the substitution.

Id. at 821 (quoting U.S.S.G. § 1B1.10(b)(2)(A)).

In Part A to Amendment 821 to the Sentencing Guidelines, the Sentencing Commission altered the "status points" provision regarding criminal history, which now appears in Section 4A1.1(e). The amended provision states:

> Add 1 point if the defendant (1) receives 7 or more points under subsections (a) through (d), and (2) committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status.

Thus, a person who otherwise has 7 or more criminal history points now receives 1 additional "status" criminal history point, instead of 2, while one who otherwise has 6 or fewer criminal history points receives no status points. On August 24, 2023, the Commission decided to apply this change retroactively. See § 1B1.10(e)(2) (Nov. 1, 2023).

In determining whether a sentence reduction is warranted, "the court shall determine the amended guideline range that would have been applicable to the defendant if the amendment(s) . . . had been in effect at the time the defendant was sentenced." § 1B1.10(b)(1). Further, "[c]ourts generally may 'not reduce the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) . . . to a term that is less than the minimum of the amended guideline range' produced by the substitution." Dillon v. United States, 560 U.S. 817, 821 (2010) (quoting § 1B1.10(b)(2)(A)).

At the time of sentencing, Cross Dog had 5 criminal history points before the addition of 2 "status points." Doc. 63 at 14. With a total criminal history score of 7, Cross Dog was placed in Criminal History Category IV. Cross Dog's total offense level was 26, so his guideline range was 92 to 115 months, and this Court sentenced him to 5 months above this range on Count II; 4 months above the bottom of the range on Count X; and then imposed the mandatory consecutive ten years for discharging of a firearm in a crime of violence on Count V. Applying Part A to Amendment 821, Cross Dog no longer receives the additional two "status points." This results in a total criminal history score of 5, placing Cross Dog in Criminal History Category III. Cross Dog's

guideline range would become 78 to 97 months on Counts II and X. Thus, Cross Dog is eligible for a sentence reduction.

The Government does not dispute Cross Dog's eligibility for the guideline range but opposes a sentence reduction based on the second step of the inquiry, consideration of the § 3553(a) sentencing factors. The § 3553(a) sentencing factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct;
>     (C) to protect the public from further crimes of the defendant; and
>     (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the [Sentencing Commission] guidelines . . . .
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]

18 U.S.C. § 3553(a). These factors inform the Court's duty to ensure the sentence imposed is "'sufficient, but not greater than necessary,' to comply with the sentencing purposes set forth in § 3553(a)[]." Pepper v. United States, 562 U.S. 476, 491 (2011). A review of the § 3553(a) factors weighs against granting a sentence reduction to Cross Dog.

The nature and circumstances of the offenses involve dangerous and violent conduct, including discharge of a firearm in shooting a police officer in the line of the officer's duties. On May 11, 2016, Rosebud Sioux Tribe Law Enforcement Services ("RSTLES") Officer Patrick Iyotte initiated a traffic stop on a vehicle driven by Alexandra Swalley. Doc. 49 at 3. Cross Dog was sitting in the passenger seat, and Swalley's two children (ages 11 and 2) were sitting in the back seat. Id. While Officer Iyotte was questioning Swalley outside the patrol vehicle, RSTLES

4

Sergeant Luke Black Bear arrived at the scene and walked a drug detector canine around the exterior of the car, which alerted to the passenger door. Id. Cross Dog got behind the wheel of Swalley's car and drove off with her two children remaining in the backseat. Id. During the ensuing pursuit, Cross Dog drove at speeds reaching 90 miles per hour and aimed a pistol at the children and himself. Id. Cross Dog then stopped the vehicle and fled on foot, with Officer Iyotte and Sergeant Black Bear pursuing him. Id.

Officer Iyotte caught up to Cross Dog and struck him in the leg with his baton. Id. at 4. Cross Dog turned and fired his pistol, shooting Officer Iyotte in the forearm. Id. Sergeant Black Bear returned fire. Id. Officer Iyotte made his way back to the patrol car, where he was met by RSTLES Officer Joshua Antman, who assisted Officer Iyotte to the local hospital. Id. Officer Iyotte suffered a shattered ulna, which required surgery. Id. at 5. Cross Dog hid in tall grass, and Sergeant Black Bear, who could not see Cross Dog, believed the situation was too dangerous to proceed alone. Id. at 4. Sergeant Black Bear then retreated to his vehicle. Id. Cross Dog escaped on foot. Id. At the time of the events, Cross Dog had been under the influence of methamphetamine for approximately six consecutive days with no sleep. Id. at 5.

On May 13, 2016, Federal Bureau of Investigation Special Agent David Keith, Deputy United States Marshal ("DUSM") Jonathan Runner, DUSM Matthew Sikes, and United States Marshals Service Task Force Officer Dustin Baxter entered a house in Parmalee, South Dakota, where Cross Dog was known to be located. Id. Cross Dog was sleeping, and when awoken, turned and reached for a loaded pistol with a round in the chamber between the bed and the wall. Id. The officers apprehended Cross Dog before he could retrieve the firearm. Id. The nature and circumstances of the offenses weigh strongly against a sentence reduction.

Cross Dog's personal history and characteristics also do not justify a reduction in sentence. Cross Dog joined the Bloods (Piru) gang at age 9 and was involved in gang activity. Doc. 63 at 17. He has been convicted of violent crimes, including Assault with a Dangerous Weapon in 2009 and Simple Assault in 2013. Id. at 13. While this Court distinguishes conviction history from arrest, Cross Dog had multiple other arrests tribally and in Pennington County where charges were pending and, in some cases, warrants outstanding for Cross Dog's arrest. Id. at 14-15. There is a fair argument given what appears in the presentencing investigation report that despite the removal of status points, the seriousness of Cross Dog's criminal history and propensity to commit crimes would merit leaving him in Criminal History Category IV under U.S.S.G. § 4A1.3(a). Cross Dog was known to carry a gun and even had pointed it at a family member in 2016. Id. at 17. Cross Dog was quite young at the time of sentencing, just 23 years old, but had not completed high school or maintained jobs for longer than a month or two at a time. Id. at 21-22. Cross Dog had longstanding substance abuse issues with alcohol, marijuana, and methamphetamine. Id. at 17, 20–21.

Citing USSG § 5H1.1, Cross Dog argues that he has matured since committing the underlying offenses at the age of 22. At the time of Cross Dog's sentencing, § 5H1.1 allowed courts to consider a downward departure for defendants who were elderly or infirm. In 2024, the Guidelines were amended, and § 5H1.1 now provides that "[a] downward departure . . . may be warranted due to the defendant's youthfulness at the time of the offense or prior offenses." However, the amendment has not been made retroactively applicable to defendants seeking a sentence reduction. See United States v. Broussard, No. 19-CR-101, 2025 WL 1924566, at *4 (D. Minn. Jul. 14, 2025). Regardless, § 5H1.1 even if applied as revised to Cross Dog does not justify a sentence reduction under these circumstances.

The Eighth Circuit has recognized that in the context of evaluating a sentence reduction, a judge may consider post-conviction developments. See United States v. Darden, 910 F.3d 1064, 1067 (8th Cir. 2018) (opining "nothing prohibits a court from considering new facts that it had no opportunity to address the first time around"). Similarly, application note 1(B)(iii) to § 1B1.10 also directs that "[t]he court may consider post-sentencing conduct of the defendant that occurred after imposition of the [original] term of imprisonment." U.S.S.G. § 1B1.10, cmt. n.1(B)(iii). The application note explains that these factors are relevant in determining whether and by how much to reduce a sentence, but only within the limits set forth in § 1B1.10(b).

Some courts in the Eighth Circuit have denied sentence reductions because of a defendant's disciplinary problems, and a disciplinary record may reflect whether a youthful offender has indeed matured. See, e.g., United States v. Boyd, 835 F.3d 791, 792 (8th Cir. 2016) (affirming denial of sentence reduction where district court had cited defendant's "extensive criminal history and record of misconduct while incarcerated, which included over thirty disciplinary violations" and had "[e]mphasiz[ed] the nature and seriousness of the danger to a person or the community that may be posed by a reduction in [defendant's] term of imprisonment"); see also United States v. Harris, No. 20-3264, 2021 WL 5272693, at *2 (8th Cir. Nov. 12, 2021) (unpublished) (affirming denial of motion upon review of details of defendant's conduct, including disciplinary data); United States v. Tofiga, 807 F. App'x 597, 598 (8th Cir. 2020) (unpublished) (affirming district court grant of motion and sentence reduction to middle of new guidelines range, based in part on disciplinary infractions while incarcerated); United States v. Rivera-Moreno, 692 F. App'x 305, 307 (8th Cir. 2017) (unpublished) (affirming denial of reduction for inmate who, though eligible for sentence reduction, had "five disciplinary reports while incarcerated, including destroying property, refusing to obey an order, and assault without serious injury").

During Cross Dog's incarceration, he has incurred several behavioral sanctions. Doc. 77-1. In 2017 and 2019, Cross Dog was sanctioned on two separate occasions for assaulting without serious injury. Id. In 2022, Cross Dog was sanctioned for possession of a dangerous weapon. Id. Finally, in 2023, on two separate occasions, Cross Dog was sanctioned for fighting with another person. Id. This does not establish a compelling case that Cross Dog has matured in a way to justify a reduction a reduction under § 5H1.1. Cross Dog's rehabilitation efforts in terms of obtaining his GED, hours spent on classes, and working to pay off his financial obligations are commendable. Doc. 75-1; Doc. 75-2; Doc. 75-3. However, the nature and circumstances of his offenses counterbalance his post-conviction rehabilitation.

A sentencing judge must also consider whether the sentence imposed reflects the seriousness of the offense, promotes respect for the law, and provides just punishment. § 3553(a)(2)(A)–(C). Considering these factors, Cross Dog's sentence to an aggregate of 120 months remains appropriate. After thoroughly reviewing the record of this case in light of the remaining § 3553(a) factors, including the kinds of sentences available, the need to avoid unwarranted sentencing disparities, and the need to provide educational, vocational, or correctional treatment most effectively, this Court concludes that the § 3553(a) factors do not support a sentence reduction here. Therefore, it is

ORDERED that Cross Dog's motion for reduction in sentence, Doc. 75, is denied

DATED this 24th day of July, 2025.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE